UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SANDRA L. KVAMME,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1]<br><br>                Defendant. | CASE NO. 12-cv-05776 RBL<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: January 24, 2014 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 16, 17, 18).

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

After considering and reviewing the record, the Court finds that the ALJ erred when reviewing the medical evidence. The ALJ failed to provide a specific and legitimate reason for failing to credit fully a doctor's opinion that plaintiff likely only could engage in part time work. Also, the ALJ erroneously discounted a doctor's opinion because that opinion was outside her specialty area, which also is not a specific and legitimate reason.

BACKGROUND

Plaintiff, SANDRA LEE KVAMME, was born in 1956 and was 51 years old on the alleged date of disability onset of May 21, 2007 (*see* Tr. 169, 172). Plaintiff is a high school graduate (Tr. 52) and at the time of the hearing had been taking some college art classes through the Disability Access Program (Tr. 55-57, 65). Plaintiff worked in the construction industry doing hazardous waste clean-up from 1992 to May 21, 2007 (Tr. 228).

Plaintiff has at least the severe impairments of "history of trauma to the left temple, status post left parietal skull fracture and subdural hematoma; vertigo with migraines; degenerative disc disease; left acetabular labrum tear; personality disorder not otherwise specified with primarily cluster B features and traits; substance abuse; and cognitive disorder (20 CFR 404.1520(c) and 416.920(c))" (*see* Tr. 17).

At the time of plaintiff's administrative hearing, she was homeless, but had lived with her brother for awhile, and then, was living with her parents (Tr. 58-59).

PROCEDURAL HISTORY

On August 23, 2010, plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) (Tr. 13, 50-52) and two applications for

Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 169-174). The applications were denied initially and following reconsideration (Tr. 101-111). Plaintiff's requested hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on August 12, 2010 (*see* Tr. 44-100). On October 7, 2010, the ALJ issued a written decision concluding that plaintiff was disabled from May 21, 2007 through June 26, 2009 (Tr. 14); but also concluding that plaintiff experienced improvement on June 27, 2009 (Tr. 24); and hence, concluding that plaintiff was not disabled pursuant to the Social Security Act as of June 27, 2009 (*see* Tr. 13-33).

On June 26, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in August, 2012 (*see* ECF Nos. 1, 4). Defendant filed the sealed administrative record regarding this matter ("Tr.") on January 14, 2013 (*see* ECF Nos. 10, 11).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ properly evaluated the medical evidence regarding plaintiff's medical condition since June 27, 2009; (2) Whether or not the ALJ properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated plaintiff's residual functional capacity for the time period beginning June 27, 2009; and (4) Whether or not the ALJ erred by basing his step five finding for the time period beginning June 27, 2009 on a

residual functional capacity assessment that did not include all of plaintiff's limitations (*see* ECF No. 15, pp. 1-2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole.

*Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

## DISCUSSION

**1. Whether or not the ALJ properly evaluated the medical evidence regarding plaintiff's medical condition since June 27, 2009.**

Plaintiff has challenged the ALJ's review of the medical evidence since June 27, 2009. Specifically, plaintiff contends that the ALJ erred in failing to credit fully opinions from Drs. Formea and Busch provided just before and just after the date of the ALJ's finding of improvement in plaintiff's condition.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

    a.  Dr. Gina M. Formea, Ph.D., examining doctor

On May 18, 2009, Dr. Gina M. Formea, Ph.D., conducted a neuropsychological evaluation of plaintiff and made a number of findings. Dr. Formea noted plaintiff's report of problem areas including headaches and dizziness, which began after her brain injury in May 2007, as well as memory problems and depression (*see* Tr. 634). Dr. Formea noted plaintiff's report that Celexa was effective for her depression, but also noted plaintiff's report of a decline in memory and attention (Tr. 635).

Dr. Formea assessed that plaintiff was cooperative with the testing procedures, and that she "appeared to put forth good effort throughout testing" (Tr. 636). Dr. Formea assessed that by the end of the day plaintiff appeared fatigued (*id.*). Dr. Formea also assessed that the results of her evaluation indicated a valid representation of plaintiff's ability.

Dr. Formea included the following assessment in her test results evaluation:

> Plaintiff had difficulty across some of the tests of verbal intellectual functioning. Her score was very poor on a test of knowledge of word meaning (Vocabulary scale score = 4). Her performance was within low

average range on subtests that measured fund of information and verbal reasoning skills. She also struggled on a subtest that required her to compute auditorily presented arithmetic problems in working memory without aid of pen or paper.

(Tr. 636).

Similarly, Dr. Formea opined that plaintiff "struggled on a subtest that required her to quickly identify salient visual detail, [and] also had significant difficulty on a measure that relied upon speed of information processing, incidental memory for new number-symbol pairs and visual motor coordination" (Tr. 637). Dr. Formea indicated her overall conclusions as follows:

> Overall, the results of this evaluation reflect some likely declines in cognitive functioning from expected pre-morbid ability levels. There is likely change in speed of processing and complex attention and memory skills. There is also likely decline in executive functioning, including organization and planning; such also influences expressive language skills and manifests as difficulty with formulation and monitoring of verbal responses that are precise and directed. It is expected that these areas of difficulty are related to, at least in part, the brain injury she sustained. It is also possible that cognitive functioning may be influenced by her current medication regimen, as [plaintiff] reported that she notices some fogginess in cognitive functioning with current medications. Given these areas of difficulty, it is recommended that [plaintiff] continue with her rehabilitation therapies to help compensate for these problem areas in daily functioning.

(Tr. 638). Dr. Formea also indicated her opinion regarding the specific vocational implication of her conclusions, in part, as follows:

> Based upon available information, plaintiff continues to experience some type of presumed seizure activity as well as experience of headaches, dizziness and fatigue which apparently resulting difficulty to consistently function on a daily basis without need for rest or slowing of activities. . . . . She would also likely need prompts to help her to stay on task and to remember specific duties that need to be completed each day. . . . Given these parameters and plaintiff's current levels of cognitive

      functioning, any return to competitive employment does not appear feasible at this time.

(*id.*).

In addition to her conclusion that plaintiff did not appear capable of competitive employment, Dr. Formea indicated that she expected that if plaintiff "were to return to some type of employment, it would likely be on a part-time basis" (Tr. 639).

The Court first notes that this final cited conclusion by Dr. Formea is not an equivocal statement, such as would be indicated by a statement that plaintiff "may" be able to work on a part-time basis (inherently implying that plaintiff may not be able to work only on a part-time basis). In contrast, Dr. Formea indicated that it was more likely than not that if plaintiff was able to successfully negotiate a return to the workforce, it would be on a part-time basis (*see* Tr. 639). This opinion is not ambiguous.

Similarly, plaintiff's "ability to travel to, attend, and complete some art classes" is not an activity that is transferable to a full time job, especially with the accommodation that plaintiff received when engaged in this activity and especially given the fact that she was not attending classes full time (*see* Response, ECF No. 16, p. 13). Therefore, it is not a legitimate reason to dismiss Dr. Formea's opinion regarding part-time work. As noted by plaintiff, and indicated in the record, plaintiff was able to attend classes with special accommodation only, and also was able to continue classes for two or three quarters only (*see* Tr. 55, 66-67; *see also* Reply, ECF No. 17, p. 7). Plaintiff testified that she dropped out in her third quarter of classes because she was starting to have difficulties and she "felt like [she] was failing" (Tr. 55). Similarly demonstrating the lack of transferability to

a full time employment setting, plaintiff testified that she attended class for about three hours a day (*see* Tr. 56).

The ALJ gave Dr. Formea's opinions some weight because they were "based on the results of cognitive testing, and because the longitudinal record is consistent with some limitations in memory and attention" (*see* Tr. 31). However, the ALJ failed to credit fully all of Dr. Formea's conclusions. Although defendant argues that "the ALJ did not reject Dr. Formea's opinion, as Plaintiff argues, but rather gave it 'some weight,'" and also argues that "it appears the ALJ adopted most of Dr. Formea's opinion," plaintiff points out that the ALJ did not credit Dr. Formea's opinion that if plaintiff was able to return to work, it would be on a part-time basis only (*see* Reply, ECF No. 17, p. 7). In contrast, a social security applicant's residual functional capacity ("RFC") and ability to work must be assessed on what an individual can do on a sustained, full-time basis. When evaluating whether or not a claimant satisfies the disability criteria, the Commissioner evaluates the claimant's "ability to work on a sustained basis." *See* 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b); *see also* 20 C.F.R. § 404.1545(c) (mental abilities).

The ALJ provided one reason for failing to credit fully Dr. Formea's opinions: He found that "it is very significant that subsequent to Dr. Formea's evaluation, the claimant was able to successfully attend school, which indicates greater capabilities than assessed; therefore, her opinion is not entirely persuasive or given significant weight" (Tr. 31).

First, the ALJ does not indicate what aspect of Dr. Formea's opinion that he finds to be inconsistent with plaintiff's attendance at school. Therefore, his reason for discounting Dr. Formea's opinion is not sufficiently specific. Additionally, and perhaps more importantly, the ALJ failed to discuss and acknowledge how plaintiff attended school, *i.e.*, with accommodation and at a less than full time course load (*see* Tr. 25). As the ALJ also failed to discuss the significant probative evidence of plaintiff's inability to maintain attendance at these classes, the ALJ's reasoning also is not legitimate (*see* Tr. 55). Plaintiff could not continue to maintain her attendance, and ceased her coursework after two quarters (*see id.*). Although it appears that plaintiff's school work demonstrates a temporary ability to maintain part time attendance in coursework, it does not appear to demonstrate that Dr. Formea's opinion that plaintiff could engage in part time work only should not have been credited fully by the ALJ.

In a separate section of his written decision, the ALJ notes that plaintiff completed 15 credits over the course of two quarters (*see* Tr. 28). There is no evidence or finding by the ALJ that an average 7.5 credit course load is transferable to full-time employment, and further, the ALJ did not explain how plaintiff's ability to complete an average of 7.5 credits a quarter with accommodation conflicts with Dr. Formea's opinion that plaintiff likely only could maintain part-time employment.

For the reasons stated and based on the relevant record, the Court concludes that the ALJ failed to provide legitimate and specific reasons for his failure to credit fully opinions from Dr. Formea. In addition, the Court concludes that it is not harmless error, therefore this matter should be reversed and remanded for further proceedings.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of these principles. *Id.* (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here, Dr. Formea opined that plaintiff likely would be capable only of part-time work. Therefore, full adoption of Dr. Formea's opinion would lead to a very different RFC, such as perhaps including an inability to maintain sustained performance for a full shift or for a full forty hours a week within normal employer tolerances for being off-task.

As such, the failure to credit fully Dr. Formea's opinion is not harmless error, as the ALJ here found that plaintiff was not disabled pursuant to the Act as of June 27, 2009, with an explicit rejection of Dr. Formea's May, 2009 opinion (*see* Tr. 30-31). Therefore, this matter should be evaluated further.

b.  Dr. Maria Busch, M.D., treating physician

The ALJ also failed to credit fully the opinions from Dr. Busch. In part, the ALJ failed to credit fully the opinions from Dr. Bush because "Dr. Busch also considered the effects of the claimant's unsubstantiated seizure disorder and her cognitive deficits/memory impairment, which are outside her specialty of internal medicine" (Tr. 29). Plaintiff argues that "under Social Security regulations, a treating physician is well-qualified to consider all of a claimant's impairments, including those not within her area of medical specialty" (Opening Brief, ECF No. 15, p. 12 (*citing Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); 20 C.F.R. 404.1527(d)(2)(2012))). Defendant admits that "Dr. Busch's specialty of internal medicine did not prevent her from opining about the limitations stemming from Plaintiff's seizure disorder and cognitive/deficits/memory impairment" (Response, ECF No. 16, p. 12).

This error, too, should be corrected following remand of this matter.

**2.      Whether or not the ALJ properly evaluated plaintiff's testimony.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part

on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

**3. Whether or not the ALJ properly evaluated plaintiff's residual functional capacity for the time period beginning June 27, 2009; and, whether or not the ALJ erred by basing his step five finding for the time period beginning June 27, 2009 on a residual functional capacity assessment that did not include all of plaintiff's limitations.**

Similarly, the ALJ assigned to this matter following remand will have to reassess plaintiff's RFC based on a proper review of the medical evidence, and further evaluation of plaintiff's credibility. If necessary, step five will have to be conducted anew.

**4. Whether this matter should be reversed for further proceedings or with a direction to award benefits.**

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

CONCLUSION

Based on the stated reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 24, 2014, as noted in the caption.

Dated this 6th day of January, 2014.

J. Richard Creatura
United States Magistrate Judge